UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BRIAN ELLIOT HOGUE,

                Plaintiff,

v.

ADA COUNTY, ADA COUNTY JAIL, et al.,

                Defendants.

Case No. 1:13-cv-00100-CWD

**MEMORANDUM DECISION AND ORDER RE: DKTS. 73, 75, 81, 85, 87, and 90**

## INTRODUCTION

Plaintiff Brian Hogue, a prisoner in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at the Idaho State Correctional Institution (ISCI), is proceeding pro se in this civil rights action. Pending before the Court are six motions: (1) Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 73); (2) Defendants' Motion to Dismiss and Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 75); (3) Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 81); (4) Defendants Sgt. Stoltenberg's and Lt. McDaniel's Cross-Motion for Partial Summary Judgment (Dkt. 85); (5) Plaintiff's Motion to Strike portions of Defendants' Cross-Motion for Summary Judgment and portions of two

**MEMORANDUM DECISION AND ORDER- 1**

affidavits and attached exhibits (Dkt. 87); and (6) Plaintiff's Motion for Leave to Conduct Discovery on the claims not at issue in the pending dispositive motions (Dkt. 90).

All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the pending motions will be decided on the record and without oral argument. Dist. Idaho L. Rule 7.1(d).

## PROCEDURAL BACKGROUND

On March 4, 2013, Plaintiff Brian Hogue filed a forty page prisoner civil rights complaint (Dkt. 3) against Ada County, the Ada County Jail, Ada County Sheriff Gary Raney, all medical personnel for Ada County Jail, and eighty-three individuals not including John and Jane Does. At all times mentioned in the complaint, Hogue was a pretrial detainee at Ada County Jail in Boise, Idaho. The Court's November 30, 2013 Initial Review Order permitted Hogue to proceed on the following claims:

1. A First Amendment access to courts claim (same as Fourteenth Amendment claim) against Defendants Panter and Roe for blocking his access to the courts regarding the filing of a habeas corpus petition in January 2012.

2. A Fourteenth Amendment excessive force claim against Defendants Ivie and Shaver for an alleged assault incident on April 26, 2011, and corresponding state law assault and battery claims.

3. A Fourteenth Amendment excessive force claim against Defendants Panter, Arnold, and Jones for an alleged assault incident on August 10, 2011, and corresponding state law assault and battery claims.

4. A Fourteenth Amendment substantive and procedural due process claim against Defendants McDaniel and Stoltenberg, for placing Plaintiff on a Behavioral Management Plan (BMP) under allegedly harsh conditions

**MEMORANDUM DECISION AND ORDER- 2**

without a hearing, and a corresponding state law claim for intentional infliction of emotional distress.

5. A Fourteenth Amendment Substantive Due Process claim against Defendants Phillips and Brewer for placing Plaintiff on a BMP under allegedly harsh conditions without examining him, given that they knew or should have known he suffered from a mental health disorder; and corresponding state law negligence and medical malpractice claims.

6. A Fourteenth Amendment substantive due process claim against Defendant Muntifering for housing Plaintiff naked and in plain view of others after Plaintiff attempted to commit suicide.

7. A First Amendment free exercise claim and RLUIPA claim against Defendants Stoltenberg and McDaniel for interfering with Plaintiff's religious practices.

8. A First Amendment free speech claim against Defendants Stoltenberg and McDaniel for interfering with Plaintiff's right to communicate by telephone or mail with the outside world and with his attorney.

9. A First Amendment free association claim against Defendants Stoltenberg and McDaniel for interfering with his rights to visitation.

10. A Fourteenth Amendment substantive due process claim against Panter for filing a false report.

(Dkt. 14.) In addition to allowing Hogue to proceed on these enumerated claims, the

Court permitted Hogue to seek amendment of his complaint to correct the deficiencies in

the claims upon which he was not permitted to proceed within thirty days of the Court's

Initial Review Order. *Id.*

On April 4, 2014, Defendants filed a motion to dismiss the entirety of Hogue's

complaint on the grounds that Hogue failed to state a claim upon which relief can be

granted; failed to exhaust his administrative remedies prior to filing his 42 U.S.C. Section

1983 claims; and, because qualified immunity shields Defendants from suit in this matter.

**MEMORANDUM DECISION AND ORDER- 3**

Hogue failed to file a formal response to Defendants' motion, and instead filed an unopposed motion to convert Defendants' motion to dismiss on the grounds of failure to exhaust into a motion for summary judgment (Dkt. 41), and filed also a Motion for Leave to Conduct Discovery (Dkt. 51), so he could respond to Defendants' dispositive motion.

On December 12, 2014, the Court entered an Order preliminarily addressing the substance of Defendants' motion to dismiss without ruling on the motion, and determined that certain defenses, such as qualified immunity and failure to exhaust administrative remedies, should be decided under Fed. R. Civ. P. 56 rather than Fed. R. Civ. P. 12. The Court provided the parties with additional time to conduct limited discovery related to exhaustion and qualified immunity, and to provide the Court with relevant exhibits and accompanying briefing before it issued its ruling. The Court notified Hogue that he may request to supplement or amend his complaint to attempt to cure the deficiencies of his claims to the extent outlined by the Court in its preliminary review of Defendants' motion, if new facts were discovered after the limited discovery period. Finally, as part of the Order, the Court outlined a schedule in an attempt to get the parties' briefing, with respect to the motion to dismiss, on track.[1]

Defendants timely complied with the Court's Order and produced the requested exhibits to Hogue and to the Court. (Dkts. 62, 63.) In a letter dated December 30, 2014, Hogue informed Defendants and the Court of his intent to file an amended complaint "as

---

[1] The parties had six weeks to conduct discovery. Hogue was ordered to file his response to the motion to dismiss within thirty days of the completion of discovery; Defendants to file a reply and response within twenty-one days thereafter; and, Hogue to file a sur-reply within fourteen days of Defendants' response/reply.

**MEMORANDUM DECISION AND ORDER- 4**

part of" his response to the motion to dismiss. (Dkt. 64.) The record does not contain Defendants' response, if one exists, to this letter. On January 22, 2015, Hogue filed a motion for additional time to conduct discovery. The Court granted Hogue's motion and permitted Hogue to also propound interrogatories and requests for admission, providing Hogue with five days to propound the discovery requests and ordering Defendants to respond to Hogue's requests no later than March 2, 2015. (Dkt. 69.)

In light of the discovery delay, Defendants requested the Court clarify the briefing schedule for its pending motion to dismiss. (Dkt. 70.) The Court determined the most efficient way to provide clarification and obtain germane briefing from the parties was to terminate the pending  motion to dismiss and allow Defendants to re-file their motion as a combination motion to dismiss/motion for summary judgment with any modifications they deemed fit upon consideration of the Court's previous order and the parties' discovery. (Dkt. 71.) The Court ordered Defendants to re-file their motion to dismiss/motion for summary judgment on or after March 2, 2015, and ordered Hogue to file his response within twenty-one days thereafter. *Id.*

On March 16, 2015, Hogue filed a motion for leave to file an amended complaint. (Dkt. 73.) Eight days later, on March 24, 2016, Defendants filed their Partial Motion to Dismiss & Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.[2] (Dkt. 75.)

---

[2] The Motion to Dismiss/Motion for Summary Judgment seeks to dismiss all of Hogue's claims except for: the Fourteenth Amendment and First Amendment claims against Defendants Sergeant Stoltenberg and Deputy McDaniel, the Fourteenth Amendment excessive force claims against Ivie and Shaver, and the Fourteenth Amendment excessive force claim against Panter for the use of pepper spray.

**MEMORANDUM DECISION AND ORDER- 5**

Over the months that followed, the parties filed several additional motions. On April 27, 2015, Hogue filed a Cross-Motion for Partial Summary Judgment against Defendants Paul Stoltenberg and John McDaniel on his Fourteenth Amendment procedural due process claim for placing Hogue on a behavioral modification plan ("BMP") without a hearing, and on Hogue's First Amendment claim regarding no contact with Hogue's attorney while on the BMP. (Dkt. 81.) On May 21, 2015, Defendants Stoltenberg and McDaniel filed a cross-motion for summary judgment on the same two claims in addition to Hogue's Fourteenth Amendment substantive due process claim and First Amendment religious exercise claim against Stoltenberg and McDaniel. (Dkt. 85.) On June 17, 2015, Hogue filed a motion to strike portions of Defendants' statement of undisputed facts in support of their cross-motion for summary judgment; the motion to strike also objected to two affidavits and attached exhibits previously filed by Defendants at the Court's request. (Dkt. 87.) The same day, Hogue filed also a motion for leave to conduct discovery on claims not subject to Defendants' two dispositive motions.[3]

The Court does not provide a detailed recitation of the alleged facts giving rise to Hogue's claims unless necessary to provide context to the claims at issue in this memorandum decision and order, as the facts previously have been extensively set out by the Court in its Initial Review Order (Dkt. 14) and in the preliminary Order on the original motion to dismiss (Dkt. 61). Before addressing the dispositive and discovery motions, the Court first will consider Hogue's motion for leave to amend.

---

[3] Hogue filed also a motion for ruling on the pending motions (Dkt. 94) and a motion for leave to file excess of three motions (Dkt. 96).The Court denied both motions. (Dkt. 97.)

**MEMORANDUM DECISION AND ORDER- 6**

## REVIEW OF AMENDED COMPLAINT

Hogue filed an eighty page motion to amend on March 16, 2015. [4] In the proposed amended complaint, Hogue seeks to re-allege several claims dismissed by the Court in its Initial Review Order, and seeks also to add claims for damages, and new claims for the first time against Ada County, Ada County Jail, Ada County Sheriff Gary Raney, and various Ada County Jail staff members. (Dkt. 73.)  After reviewing the proposed amended complaint, the Initial Review Order (Dkt. 14), and the Court's preliminary Order on the Defendants' combined motion to dismiss/motion for summary judgment (Dkt. 61), the Court concludes Hogue will not be permitted to proceed on claims other than the ten claims he was permitted to proceed upon pursuant to the Initial Review Order.

"[L]eave to amend should be freely granted." *Biggs v. Wilson*, 2 F.3d 1156 (9th Cir. 1993) (internal citations omitted). "[T]his strong policy toward permitting the amendment of pleadings, however, must be tempered with considerations of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*

---

[4] Hogue filed also a Motion for Initial Review of Amended Complaint (Dkt. 74), which he later withdrew in August of 2015. (Dkt. 95.) The Court does its best to enter orders on the motions it has before it; however, there is no rule requiring the Court to rule on pending motions within five months, as Hogue suggests. In its previous order, the Court explained it retains screening authority to dismiss claims at any time during the litigation under 28 U.S.C. § 1915(e). The Court will exercise that authority now upon full consideration of Hogue's proposed amended complaint.

**MEMORANDUM DECISION AND ORDER- 7**

The Court will deny Hogue's request to amend his complaint to include re-alleged claims dismissed by the Initial Review Order, because Hogue failed to file his proposed amended complaint within the time period provided by the Court, and because the substance of the re-alleged claims do not comport with the instructions provided by the Court in its Initial Review Order.[5] With regard to timing, the Court permitted Hogue to cure his deficient claims by filing a motion to amend with a proposed amended complaint within thirty days after the entry of the Initial Review Order. (Dkt. 14 at 35.) The Court issued its Initial Review Order on November 11, 2013—Hogue filed his proposed amended complaint approximately one year and three months after that deadline. Likewise, the Initial Review Order instructed Hogue, if he chose to amend his complaint, to "omit claims without factual support or a proper legal basis." *Id.* Hogue's re-alleged claims do not adequately set forth facts supporting these claims and are merely empty recitations of the standards of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court will not permit Hogue to proceed on the several new claims he alleges for the first time in the proposed amended complaint[6] because many, if not all, are time

---

[5] These claims include: (1) claims of retaliation and failure to act based on excessive force against Miller and Forrey; (2) claim against Roe for not acting after Hogue warned him he intended to commit suicide; (3) Section 1983 based policy claims against Ada County; and (4) due process claims against Panter, Ellington, Jordin, Muntifering, and Estrada.

[6] These claims include: (1) Fourth Amendment claim against Panter for the seizure of his property; (2) retaliation claim against an unknown deputy; (3) Fourteenth Amendment excessive force claim for improper use of restraints against Pickard and Usog; (4) Americans with Disabilities Act claim against Jones, Muntifering, and Ada County; and, (5) various state law claims against Ada County, Ada County Jail, Sheriff Raney, Ivie, Panter, Grunwald, McDaniel, Eliason, Welch, CCHP, Stoltenberg.

**MEMORANDUM DECISION AND ORDER- 8**

barred by the statute of limitations.[7]  Further, Hogue has had knowledge of these new claims since at least May 8, 2012 (his last day at Ada County Jail). To allow Hogue to include new claims nearly three years after they occurred and at the "eleventh hour," when the Court is attempting to resolve Defendants' combined motion to dismiss/motion for summary judgment, would be prejudicial to Defendants. Accordingly, Hogue is not permitted to proceed on these claims alleged for the first time in the proposed amended complaint. *See Biggs v. Wilson*, 2 F.3d at 1156 (denying motion for leave to amend filed one year and four months after the original complaint was filed and on the eve of a hearing on a summary judgment motion). Finally, the newly added claims also fail on their merits as they do not satisfy the pleading requirements, and the Court retains the inherent authority to deny him the opportunity to proceed on these claims under 28 U.S.C. § 1915(e). [8]  For these reasons, Hogue is not permitted to amend to include these claims.

---

[7] Hogue's federal claims are asserted under 42 U.S.C. Section 1983. The text of Section 1983 does not expressly contain a statute of limitations. When "a federal civil rights statute does not include its own statute of limitations, federal courts borrow from the forum state's limitations period for personal injury torts." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). *Owens v. Okure*, 488 U.S. 235, 250 (1989) ("[S]tate law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."). In Idaho, the statute of limitations for personal injury actions is two years after the accrual of a claim. *See* I.C.§ 5-219; *Joseph v. Boise State Univ.,* 998 F. Supp. 2d 928, 948 (D. Idaho 2014).

[8] For example, Hogue alleges an ADA claim against Defendant Jones and Ada County Jail based upon Defendants' failure to make a reasonable accommodation to Hogue's learning disability by not providing him with a scribe or word processor to assist him with writing documents; however, Hogue fails to plead facts to support that he was denied a reasonable accommodation "by reason of his disability." Likewise, Hogue alleges a Fourth Amendment right to privacy claim based upon being left nude in his cell causing him to be exposed to surveillance cameras, other inmates, and jail staff. However, this claim failed to state a violation of rights, as the law is clearly established that "prisoners do not have privacy rights in individual cells." *Hall v. State Bd. of Control*, 21 F. App'x 561, 562 (9th Cir. 2001); *see also Hudson v. Palmer*, 468 U.S. 517, 527-28, (1984); *see also Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985) ("Prison policy and practice of allowing female correctional officers to view male inmates in states of

**MEMORANDUM DECISION AND ORDER- 9**

However, to the extent Hogue has bolstered the factual allegations for the ten claims against Defendants upon which Hogue was permitted to proceed in the Court's Initial Review Order (Dkt. 14), and preliminary Order on Defendants' first motion to dismiss/motion for summary judgment (Dkt. 61), the Court will consider such new factual allegations in its analysis of the three pending dispositive motions.[9] Accordingly, the Court will grant in part Hogue's motion to amend his complaint with regard to the two surviving claims as explained below.

## PLAINTIFF'S OBJECTION AND MOTION TO STRIKE (DKT. 87)

In the Court's preliminary Order addressing Defendants' original motion to dismiss, the Court permitted Defendants to submit additional evidence and/or affidavits in the form of a *Martinez* report for the Court's consideration.[10] (Dkt. 61 at 4, 40.) On December 26, 2014, Defendants complied with the Court's order, and produced additional information in the form requested by the Court. *See* (Dkts. 62, 63.) This

---

partial or total nudity while dressing, showering, being strip searched, or using toilet facilities did not violate inmates' rights of privacy under Fourteenth Amendment.").

[9] Defendants' Motion to Dismiss/Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 75), Plaintiff's Cross-Motion for Summary Judgment (Dkt. 81), and Defendants Stoltenberg and McDaniel's Cross-Motion for Summary Judgment (Dkt. 85).

[10] The Court may request a *Martinez* report as part of its screening authority pursuant to 28 U.S.C. §§ 1915 and 1915A. The report may contain sworn statements of persons having knowledge of the subject matter in the Complaint. When appropriate, medical records may be included in the written report, taking into consideration the privacy concerns involved. If Plaintiff's claims or Defendants' defenses involve the application of administrative rules, regulations, or guidelines, the report may include copies of all such applicable administrative rules, regulations, or guidelines, unless such copies have already been provided to the Court. The Court reviews that report to determine whether Plaintiff's Complaint is subject to dismissal. If it appears to the Court that the report may provide a basis for dismissal of Plaintiff's claims, Plaintiff will have an opportunity to respond to the report. *See Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (per curiam); *see also In re Arizona*, 528 F.3d 652, 656 (9th Cir. 2008) (per curiam) (upholding the district court's order requiring defendants to submit a *Martinez* report).

**MEMORANDUM DECISION AND ORDER- 10**

information included, among other documents, the affidavits of Lorna Jorgensen (Dkt. 62-4) and Lieutenant Chad Sarmento (Dkt. 62-1), with exhibits attached to each.

Nearly six months later, Hogue filed an Objection and Motion to Strike (Dkt. 87). Specifically, Hogue objected to the Affidavit of Jorgensen (Defendants' counsel) and the attached jail security logs and single inmate request form on the grounds of foundation and authenticity; and he objected also to the Jail Incident Reports and cell temperature records attached to the Affidavit of Sarmento (a custodian of records for Ada County Jail) on the grounds of relevance, authenticity, and hearsay. Further, Hogue requests the Court strike portions of Defendant Stoltenberg's and McDaniel's statement of undisputed facts in support if their Cross-Motion for Summary Judgment (Dkt. 85-2) which make reference to certain Jail Incident Reports attached to the Sarmento Affidavit and references to Hogue's past criminal history.

"Federal Rule of Civil Procedure 56 requires summary judgment motions to be supported by cites to the record and affidavits." *Savage v. Dennis Dillon Auto Park & Truck Ctr., Inc.*, 2015 WL 6134354, at *2 (D. Idaho Oct. 19, 2015); Fed. R. Civ. P. 56(c)(1)(A). However, the rule allows for flexibility. *Id.* In determining admissibility for summary judgment purposes, which is precisely what Hogue requests the Court do here, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003).

Fed. R. Civ. P. 56(c)(2) provides:

A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**MEMORANDUM DECISION AND ORDER- 11**

This means that, if the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is currently presented in an inadmissible form. *Id.* (affirming consideration of hearsay contents of the plaintiff's diary on summary judgment because at trial, the plaintiff's testimony of contents would not be hearsay).

The Court will overrule Hogue's objections with regard to the Affidavits of Jorgensen and Sarmento and attached exhibits, because the Court specifically requested Defendants supply this information to the Court. Further, Hogue's objections are clearly the types of objections covered by Fed. R. Civ. P. 56(c). Because this information could be presented in an admissible form at trial, the Court will consider them in deciding the motions for summary judgment.

The Court will not strike the portions of the undisputed facts which make reference to Hogue's alleged past criminal activity. Fed. R. Civ. P. 12(f) permits the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Under express language of the rule, only *pleadings* are subject to motions to strike." S*idney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983) (emphasis added). Defendants' statement of undisputed facts is not a pleading. Nonetheless, the Court will not consider the information regarding his alleged criminal history in deciding the motion to dismiss or motions for summary judgment, as Hogue's criminal history is not relevant to whether Hogue may proceed with his claims.

**MEMORANDUM DECISION AND ORDER- 12**

## DEFENDANTS' PARTIAL MOTION TO DISMISS (DKT. 75)

Defendants seek to dismiss the following six claims which Hogue was allowed to proceed upon in the Court's Initial Review Order pursuant to Fed. R. Civ. P. 12(b)(6): (1) Fourteenth Amendment due process claim for filing a false report against Panter; (2) Fourteenth Amendment Substantive Due process claim for depriving Hogue of his right to privacy against Muntifering; (3) First Amendment religious exercise and RUILPA claims against Stoltenberg and McDaniel; (4) First Amendment interference with visitation claim against Stoltenberg and McDaniel; (5) First Amendment access to courts claim against Panter and Roe; and, (6) Fourteenth Amendment excessive force for removal from cell claim against Panter, Jones, and Arnold. Defendants seek also to dismiss Hogue's state law claims.

### I. Motion to Dismiss Standard— Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint fails to state a claim for relief if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of

**MEMORANDUM DECISION AND ORDER- 13**

action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Although a plaintiff must provide sufficient facts to survive a motion to dismiss, providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts"). "Although Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff's complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by going beyond the bare minimum, a plaintiff may plead herself out of court." *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995) (quoting *Thomas v. Farley,* 31 F.3d 557, 558–59 (7th Cir. 1994)).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court generally should not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not appended to) the complaint, where the authenticity of such a document is not in question. *Id.* at 622-23.

**MEMORANDUM DECISION AND ORDER- 14**

A court may also take judicial notice of matters of its own records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records, such as records and reports of administrative bodies, *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

## II. Fourteenth Amendment Substantive Due Process claim for filing a false report— Panter

Hogue alleged in his original complaint that Deputy Panter filed a false report of the August 10, 2011 removal from cell incident.[11] In the Court's preliminary order on Defendants' original motion to dismiss (Dkt. 61 at 13), the Court determined that, because there is no due process right to be free from having false disciplinary reports placed in a detainees' file, Hogue failed to state a claim against Deputy Panter regarding the alleged filing of a false report.[12] Defendants seek again to have the claim dismissed. Hogue's proposed amended complaint does not re-allege this claim. Therefore, the Court finds dismissal is proper for the reasons stated in its preliminary order. (Dkt. 61 at 13.)

## III. Fourteenth Amendment Substantive Due Process claim for depriving Hogue of his right to privacy—Muntifering

A. Background/Procedural Facts

In his original complaint, Hogue alleged that, after he attempted to commit suicide, Sergeant Muntifering ordered medical staff not to provide Hogue a smock or suicide blanket on account of the restrictions in his behavioral modification plan

---

[11] The details of this incident are more fully explained below. *See* p. 15 of this memorandum decision and order.

[12] The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. However, a litigant cannot bring a due process claim unless he demonstrates that he was deprived of a liberty or property interest protected by the Due Process Clause." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989).

**MEMORANDUM DECISION AND ORDER- 15**

("BMP"). (Dkt. 3 at 16.) As a result of Sergeant Muntifering's order, Hogue remained

nude in his cell.[13] Hogue alleges he was placed "on display for male and female staff,

inmates, and visitors to see." *Id.* In its Initial Review Order, the Court permitted Hogue to

proceed on a substantive due process claim against Muntifering for housing him naked in

plain view of others after he attempted suicide.

In their original motion to dismiss, Defendants challenged this substantive due

process claim on the grounds that Hogue failed to state a claim upon which relief could

be granted.[14] (Dkt. 35 at 25-27.) The Court's preliminary Order on the motion to dismiss

addressed Hogue's claim in connection with Defendants' argument and ordered Hogue to

clarify his facts with regard to who was able to view him when he was naked, and to

provide a description of his words and behaviors that caused Defendants to place him in

the segregation cell. Hogue's proposed amended complaint alleges no new facts,

although he clarifies that male and female inmate workers who served him food and jail

visitors were able to view him, and also, that he was left naked from September 8 through

September 10, 2011.

B. Discussion

Defendants now seek to dismiss Hogue's Fourteenth Amendment substantive due

process claim against Sergeant Muntifering on the grounds that: (1) Hogue's claim is not

---

[13] Though Hogue's BMP permitted him to have one pair of underwear (until he earned back his clothing upon good behavior), he did not have underwear at the beginning of his BMP. Hogue alleges his underwear was taken from him for no reason. (Dkt. 73-1 at 25.) Defendants, on the other hand, allege Hogue did not have underwear because he attempted to flush his one pair down the toilet. (Dkt. 85-2 at 4.)
[14] The original motion to dismiss sought also to dismiss this claim on qualified immunity grounds. Defendants do not argue dismissal on qualified immunity grounds in their new motion to dismiss/motion for summary judgment. Accordingly, the Court will not address qualified immunity.

**MEMORANDUM DECISION AND ORDER- 16**

plausible as female prisoners are not housed in the same cells as male prisoners and visitors do not have access to jail cells;[15] (2) Hogue does not allege how Muntifering violated his rights; (3) Hogue failed to demonstrate that Muntifering's alleged actions were taken with an intent to punish Hogue or that housing Hogue in the nude was not related to a legitimate governmental objective.

"To demonstrate a substantive due process claim, a plaintiff must show that a government official deprived him or her of a constitutionally protected life, liberty, or property interest." *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1151 (D. Idaho 2010) (citing *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998)). "Pretrial detainees have a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (internal citations omitted). "This right is violated if restrictions are 'imposed for the purpose of punishment.'" *Id.* (citing *Bell,* 441 U.S. at 535) "There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate government purpose.'" *Id.* (quoting *Bell,* 441 U.S. at 535.) "In such a circumstance, governmental restrictions are permissible." *Valdez,* 302 F.3d at 1045 (citing *Salerno,* 481 U.S. at 747).

Absent an express intent to punish, the Court must determine whether punitive intent can be inferred from the nature of the restriction imposed by the jail (and by Muntifering specifically). *Id.* "This determination will generally turn upon 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable

---

[15] Because the Court agrees with Defendants on the second and third grounds, the Court will not address this argument.

**MEMORANDUM DECISION AND ORDER- 17**

for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 1045-46 (citing *Bell,* 441 U.S. at 539 (internal quotations omitted)). "Put more simply, 'if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* (quoting *Bell,* 441 U.S. at 539).

The restriction at issue here is Sergeant Muntifering's denial of a smock and suicide blanket to Hogue. Hogue alleges he sat in his cell for two days, naked, in view of passerby prison staff, prisoners, and visitors (both male and female, according to Hogue). However, Hogue does not allege in either his original or proposed amended complaint that Muntifering withheld a smock and suicide blanket to punish him. Rather, he alleges Muntifering said: "[Hogue] don't get the smock or blanket since he is on the BMP." (Dkt. 73-1 at 29.)

Withholding these items to enforce the provisions of Hogue's BMP (the provisions of which Sergeant Muntifering is not responsible for drafting, overseeing, or approving) does not by itself demonstrate intent to punish on the part of Muntifering. Likewise, Hogue failed to allege or provide facts to contest that Muntifering's denial of a smock and suicide blanket related to a legitimate peneological interest. Accordingly, Hogue has failed to state a Fourteenth Amendment substantive due process claim against Muntifering, and the Court will dismiss this claim.

**MEMORANDUM DECISION AND ORDER- 18**

**IV. First Amendment interference with religious exercise and RLUIPA claims—Stoltenberg and McDaniel**

A. Background/Procedural Facts

In Hogue's original complaint, he alleged that, as part of the BMP, he was denied access to religious books, which denial violated his First Amendment right to religious exercise and rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Dkt. 3 at 31.) In the Court's Initial Review Order, the Court permitted Hogue to proceed on both claims.

Defendants sought to dismiss Hogue's religious exercise claims in their original motion to dismiss (Dkt. 35-1 at 11) on the ground Hogue failed to demonstrate the removal of his religious books constituted a substantial burden on the exercise of his religious beliefs. The Court's preliminary Order on the motion to dismiss addressed Hogue's claim in connection with Defendants' argument. As part of its analysis, the Court considered also the grievance Hogue filed complaining about this incident. Because the grievance response indicated Hogue *was* permitted to have one book or magazine on a rotating basis and Hogue did not allege he tried to obtain religious books on this rotating basis but was denied, or that the accommodation was not sufficient for him to practice his religion, the Court found Hogue failed to state a claim. However, the Court permitted Hogue to bring forward additional factual allegations to support his claims. (Dkt. 61 at 18.)

Hogue's proposed amended complaint addresses this incident and states: "when Defendant(s) as part of the BMP prohibited Mr. Hogue, from having, reading, or

**MEMORANDUM DECISION AND ORDER- 19**

possessing a Bible or any other religious book which is necessary for the practice of Mr. Hogue's religion, despite Mr. Hogue's multiple requests for access to a Bible; which was a direct violation of federal law." (Dkt. 73-2 at 32-33.)

B. Discussion

Defendants seek again to dismiss Hogue's First Amendment religious exercise and RLUIPA claims for the reasons stated by the Court in its preliminary Order on the original motion to dismiss. Upon careful review of the proposed amended complaint, the Court finds Hogue has failed to assert any additional factual allegations to support his claims. The proposed amended complaint merely recites elements of a First Amendment cause of action supported by conclusory and self-serving statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For this reason, and those stated in its preliminary Order on Defendants' motion original motion to dismiss, the Court finds Hogue has failed to state a plausible First Amendment religious exercise, or RLUIPA claim, and the Court will dismiss these claims.

**V. First Amendment access to courts, First Amendment interference with visitation, and Fourteenth Amendment excessive force for removal from cell claims**

The Court will not address on the merits, Defendants' motion to dismiss with respect to Hogue's: First Amendment access to courts claim against Panter and Roe; First Amendment claim for interference with visitation against Stoltenberg and McDaniel; and Fourteenth Amendment excessive force claim regarding the removal from cell incident against Panter, Arnold, and Jones. Instead, the Court will address and dismiss these

**MEMORANDUM DECISION AND ORDER- 20**

claims due to Hogue's failure to exhaust his administrative remedies as explained more fully below in connection with the motions for summary judgment.

## VI. State Law Claims

In its Initial Review Order, the Court permitted Hogue to proceed on his state law claims only to the extent they corresponded with the federal claims upon which he was permitted to proceed and to the extent he has complied with the Idaho Tort Claims Act.

In their original motion to dismiss, Defendants sought to dismiss Hogue's state law claims on grounds and for reasons that: (1) Hogue failed to comply with the Idaho Tort Claims Act; (2) Hogue failed to post bond as required by Idaho Code Section 6-610; and (3) Defendants Phillips and Brewer are immune from liability pursuant to Idaho Code Section 6-904(B). The Court addressed each argument in its preliminary Order.

With respect to the Idaho Tort Claims Act (ITCA), the Court ordered Hogue to indicate (in his response to the motion to dismiss) whether he timely complied with the ITCA requirements and to attach copies of the notices if he has them. The Court rejected Defendants' bond argument on account that an indigent prisoner's state law claims are not barred for failure to post bond. *Pugsley v. Cole*, 2005 WL 1513112 (D. Idaho June 27, 2005); *See Hyde v. Fisher*, 143 Idaho 782, 152 P.3d 653, 656 (Idaho Ct. App. 2007) (adopting *Pugsley*); *see also Beehler v. Fremont County*, 145 Idaho 656, 182 P.3d 713, 717 (Idaho Ct. App. 2008). Finally, the Court declined to dismiss the claim against Phillips and Brewer pursuant to Idaho Code Section 6-904B given the standard under this

**MEMORANDUM DECISION AND ORDER- 21**

state statute is similar to the deliberate indifference standard applicable to Hogue's

Fourteenth Amendment claim against Phillips and Brewer.[16]

Defendants raise all three arguments again in their new motion to dismiss.

A. ITCA Compliance

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants seek dismissal of the state law

tort claims brought against them by Hogue. Idaho Code Section 6-906 provides: "[n]o

claim or action shall be allowed against a governmental entity or its employee unless the

claim has been presented and filed within the time limits prescribed by this act." The

ITCA requires notice of claim to be presented and filed within 180 days from the date the

claim arose. Idaho Code §6-906.

A "claim" under the ITCA is "any written demand to recover money damages

from a governmental entity or its employee which any person is legally entitled to

recover under this act as compensation for the negligent or otherwise wrongful act or

omission of a governmental entity or its employee." *Id.* § 6-902(7). "No claim or action

shall be allowed against a governmental entity or its employee unless the claim has been

*presented and filed* within the time limits prescribed by this act." *Id.* § 6-908 (emphasis

added); *see Turner v. City of Lapwai*, 157 Idaho 659, 665, 339 P.3d 544, 550 (2014)

(dismissing tort claims because they were not filed with the city clerk).

---

[16] "Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees," courts apply the same "deliberate indifference" standard in both cases. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010); *see Castro v. Cty. of Los Angeles*, 797 F.3d 654, 664 (9th Cir.) *reh'g en banc granted,* 809 F.3d 536 (9th Cir. 2015) (finding deliberate indifference test for pretrial detainees the same as convicted prisoners, but acknowledging that *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015) may establish a different standard for pretrial detainees in excessive force cases).

**MEMORANDUM DECISION AND ORDER- 22**

In his proposed amended complaint, Hogue alleges he timely filed a notice of tort claim within 180 days of the incidents giving rise to his tort claims, as required by the Idaho Tort Claims Act. (Dkt. 73-1 at 6.) In his response to Defendant's Motion for Summary Judgment/Motion to Dismiss (Dkt. 75), Hogue attaches three handwritten Notice of Tort Claims addressed to the Ada County Clerk. (Dkt. 80-4.) Although the copies provided by Hogue bear no indication they were actually filed with and received by the Ada County Clerk, Defendants have presented no evidence contesting the filings. Therefore, Hogue's statement that he timely complied with the ITCA, along with the copies of the notices provided by Hogue, are sufficient to survive Defendants' motion to dismiss on this aspect of the state tort claims.

### B. Bond Requirement Idaho Code Section 6-610

The Court denied Defendants' argument that Hogue's state law claims fail because he did not post bond pursuant to Idaho Code Section 6-610, on account of Hogue's status as an indigent prisoner. Defendants now argue the bond requirement nonetheless applies, and contend that nothing in the record demonstrates Hogue's indigency. The Court again rejects Defendants' argument. Hogue is a pro se prisoner proceeding in forma pauperis—the status speaks for itself, and establishes that Hogue is indigent.

### C. Immunity under Idaho Code Section 6-904B(5) for state negligence claims against Phillips and Brewer

The Court permitted Hogue to proceed on negligence and medical malpractice claims against Ada County Jail social worker Phillips and Nurse Brewer for approving

Hogue as mentally and physically fit for the BMP without actually examining him. In its preliminary Order on Defendant' motion to dismiss, the Court initially permitted this claim to proceed because the standard under the Idaho statute is similar to the "deliberate indifference" standard required for Hogue to prove his Fourteenth Amendment claims against Phillips and Brewer. However, because the Court will dismiss Hogue's Fourteenth Amendment Claim for failure to exhaust his administrative remedies (as more fully explained in the below motion for summary judgment section) the Court will address now whether Hogue has sufficiently plead facts that, if proven, would deny Phillips and Brewer the immunity provided by Idaho Code Section 6-904B(5) with regard to Hogue's negligence claims.

Idaho Code Section 6–904B(5) provides immunity to Phillips and Brewer unless Hogue can prove these Defendants acted with "gross negligence or reckless, willful and wanton conduct" in providing (or not providing) medical care to him. *Id.* The ITCA defines gross negligence as "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others." I.C. § 6–904C(1). "[T]o establish gross negligence under I.C. § 6–904B, there must be evidence showing not only the breach of an obvious duty of care, but also showing deliberate indifference to the harmful consequences to others." *Block v. City of Lewiston*, 328 P.3d 464, 466 (Idaho 2014) (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER- 24**

Hogue alleges in his proposed amended complaint that on September 1, 2011,

Deputy Lindquest sent an email to Defendant Phillips which read:

> I have observed inmate Hogue crying, shaking, and sitting on his cell floor in the early morning hours on 9/1/2011. He has asked me to see a psychiatrist. I told him I would put him in touch with our professional staff. I asked him if he felt like hurting himself but he denied suicidal ideation. An outgoing letter from him to Becky gave me an indication that he is very depressed. His behavior has been up and down (from anger-mule kicking his cell door, to weeping) the last [four] 4 days I have been assigned to his housing unit in CCU. Please take the time to see and assess him as soon as possible.

(Dkt. 73-2 at 5.) Hogue alleges an appointment was immediately scheduled for him to be

seem by the medical unit on September 2, 2011; however, this appointment was

rescheduled twice, once to September 5, 2011, and again to September 6, 2011. Hogue

alleges he was not examined on September 6, 2011, despite having an appointment.

Hogue alleges on September 6, 2011, Defendant Phillips and Brewer "cleared"

Hogue mentally and physically for the BMP Stoltenberg intended to implement. On

September 7, 2011, Hogue was placed on the BMP and attempted to commit suicide that

evening.

These facts do not demonstrate that Phillips or Brewer acted with deliberate

indifference to Hogue or his medical needs. While the email provided by Deputy

Lindquest (who does not appear to be a medically trained professional) alerted Phillips to

Hogue's strange behavior, and indicated that Hogue might be depressed—Hogue had

indicated he was not suicidal. Thus, it was not readily apparent from the email that

medical care or a medical evaluation was necessary immediately, or before approving

Hogue for his placement on the BMP. Approving Hogue for the BMP without examining

**MEMORANDUM DECISION AND ORDER- 25**

him, as Phillips and Brewer allegedly did, may rise to the level of negligence, but it does not rise to gross negligence or deliberate indifference. Further, with regard to Brewer, Hogue failed to allege facts to support how Brewer knew or should have known that Hogue suffered from a mental health disorder, as Hogue does not allege that Brewer read or had knowledge of the email from Deputy Lindquest or any other pertinent information.

Accordingly, the Court finds Defendants Phillips and Brewer are immune from Hogue's state law negligence claims pursuant to Idaho Code Section 6-904B(5).

## MOTIONS FOR SUMMARY JUDGMENT (DKTS. 75, 81, and 85)

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party

**MEMORANDUM DECISION AND ORDER- 26**

meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no material factual disputes—does not vitiate the court's responsibility to determine whether genuine disputes as to material fact are present. *Id*.

## II. Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 75)

Defendants seek to dismiss the following four claims on the grounds and for reasons that Hogue failed to exhaust his administrative remedies: (1) First Amendment access to courts claim against Panter and Roe; (2) First Amendment visitation claim against Stoltenberg and McDaniel; (3) Fourteenth Amendment excessive force for removal from cell claim against Panter, Jones, and Arnold; and, (4) Fourteenth Amendment Substantive Due Process claim against Phillips and Brewer.[17]

---

[17] Defendants sought to dismiss these claims in their original motion to dismiss. (Dkt. 35.) In the Court's preliminary order addressing Defendants' exhaustion arguments, the Court found after an extensive review of the then existing record, that no grievances existed for the first three claims. (Dkt. 61 at 22.) The Court directed Hogue to either point the Court to the location of these grievances, or provide a reason, if applicable, why he should be excused from failing to exhaust his administrative remedies. The Court did locate a grievance which addressed the fourth claim, but noted that prison officials had not

**MEMORANDUM DECISION AND ORDER- 27**

### A. Exhaustion Standard

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[18] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be

---

responded to it. The Court concluded that it considered the fourth claim exhausted unless Defendants could demonstrate that the grievance was in fact never received by prison officials. The Court permitted the parties to conduct limited discovery on these exhaustion issues.

[18] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER- 28**

decided at the very beginning of the litigation." *Id.* at 1171. Fed R. Civ. P. 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed, and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and

**MEMORANDUM DECISION AND ORDER- 29**

generally available administrative remedies effectively unavailable to him." *Albino*, 747

F.3d at 1172.

Confusing or contradictory information given to a prisoner "informs [the]

determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d

at 937. Administrative remedies will be deemed unavailable and exhaustion excused if

the inmate had no way of knowing the prison's grievance procedure, if the prison

improperly processed an inmate's grievance, if prison officials misinformed an inmate

regarding grievance procedures, if the inmate "did not have access to the necessary

grievance forms within the prison's time limits for filing the grievance," or if prison staff

took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*,

2014 WL 1317141, at 1172-73.

If a prisoner has failed to exhaust available administrative remedies, the

appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108,

1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

**B. Ada County Jail Grievance Procedure**

Before individuals are assigned housing at the Ada County Jail, they are placed in

a holding cell. While in the holding area, inmates are provided a copy of the Ada County

Sheriff's Office Ada County Jail Inmate Handbook ("Inmate Handbook") to review.

(Dkt. 35-2.) The grievance procedure is outlined on pages twenty-five through twenty-

seven of the Inmate Handbook. (Dkt. 35-3 at 31.) Inmates are asked to sign an

acknowledgment that they have been provided a copy of the Inmate Handbook to review,

**MEMORANDUM DECISION AND ORDER- 30**

that they have taken time to familiarize themselves with it, and have asked any questions they may have.[19] (Dkt. 35-4.)

If an inmate desires to grieve a decision or action, he must ask a deputy for an Inmate Grievance Form. (Dkt. 35-3 at 31.) Grievances are formally available twice a day at headcount which occurs at 7:00 a.m. and again at 7:00 p.m. *Id.* Inmates may request a grievance form at any other time; efforts are made to deliver a form as soon as possible.[20] *Id*. Deputies collect Inmate Grievance Forms at headcount, but will pick up forms at other times, if requested, when they walk by. (Dkt. 35-3 at 32.) Inmate Grievance Forms must be submitted or filed within seven days of the incident, decision, or action.[21] *Id.*

Once the inmate completes his section of the form and turns it in, the Inmate Grievance Form is entered into a computerized system; a scanned electronic copy of the original grievance is also created and maintained for records. *Id.* The staff member who has been grieved will respond to the grievance, and return it to the inmate. *Id.* If an inmate is not satisfied with the response, he may file an appeal to the on-shift supervisor. *Id.* A copy of the on-shift supervisor's response will be returned to the inmate. *Id.*

---

[19] Copies of the Inmate Handbook are kept on a shelf at the deputy station in each of the dorms for inmate access. Inmates in individual cell blocks must ask for a copy of the Inmate Handbook, and one is then delivered to their cell. (Dkt. 35-2 at 2-3.)

[20] "Staff members are not required to immediately provide a grievance, especially if [the inmate] is being disruptive or [when an inmate is] currently outside of [his] assigned housing area." (Dkt. 35-3 at 32.)

[21] Grievances must be submitted within three hours for Class I, II, or III violations. It does not appear any of the exhaustion disputes here involve grievances which had to be filed within three hours. (Dkt. 35-3 at 32.)

**MEMORANDUM DECISION AND ORDER- 31**

On March 8, 2011, the day Hogue was incarcerated at Ada County Jail, Hogue

acknowledged by his signature that he received the Handbook. (Dkt. 35-4.) On April 6,

2011, Hogue filed his first of many inmate grievance forms.[22]

### C. Discussion

#### i. First Amendment Access to Courts Claim—Panter and Roe

Hogue alleges that, after Hogue gave his habeas corpus filing to a deputy,

Deputies Panter and Roe brought it (opened) back to Hogue and threw it in his cell. (Dkt.

73-2 at 31.) During this transaction, Hogue alleges Panter told him: "The courts don't like

it when you waste their time. And we don't like it, when you lie about us like this." *Id.* at

32. Roe allegedly told Hogue: "We have always been so nice to you, why would you say

such mean things about us?" *Id.*

Hogue admits he did not file an inmate grievance form with respect to this

incident. (Dkt. 80 at 22.) However, Hogue argues he should be excused from exhausting

his administrative remedies because Hogue feared he would be retaliated against if he

filed a grievance. In support of this argument, Hogue alleges in his affidavit that, on

January 10, 2012, he did fill out a grievance form regarding this incident and he tried to

submit the form to Deputy Greany—however, Deputy Greany refused to accept it. (Dkt.

80 at 24.) Hogue alleges Greany told him that he was barred from using the grievance

system; that Roe would be mad about the grievance; and that Hogue would end up

getting hurt if he complained. *Id.*

---

[22] The Court created a chart of all grievances both Houge and Defendants submitted. (*See* Dkt. 61-1 at 1-3.) The list does not include medical grievances which were filed under seal after the chart was created. (*See* Dkt. 63.)

**MEMORANDUM DECISION AND ORDER- 32**

An inmate's fear of retaliation may suffice to render the inmate grievance process unavailable, and therefore excuse an inmate's failure to exhaust. *McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015). "To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable." *Id*. at 987. There must be evidence that "a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id*.

Here, the Court declines to accept Hogue's argument that threats of retaliation by deputy Greany rendered the grievance process effectively unavailable to him.[23] While threatened harm by a correctional officer might deter a reasonable prisoner from filing a grievance, the record does not support a finding that Hogue was actually deterred from filing a grievance. The same day of the alleged threat by Greany, Hogue filed a grievance against another deputy for "threatening retaliation for me using my right to report abuse of my rights." (Dkt. 35-9 at 69.) Hogue then continued to use the grievance system three

---

[23] A theme throughout Hogue's opposition to Defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. 80), and also in his affidavit (Dkt. 80-2), is a general allegation Hogue feared Ada County jail staff would retaliate against him for filing inmate grievance forms. However, when an inmate simply indicates that he feared retaliation, an overall allegation "does not give the Court a basis for finding that [he] actually believed prison officials would retaliate against them, or that such a belief was objectively reasonable." *Schmidt v. Idaho Dep't of Corr.*, 2016 WL 617409, at *3 (D. Idaho Feb. 16, 2016); *see McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015). Accordingly, Hogue's general allegation of fear of retaliation will not excuse Hogue from his obligation to exhaust his administrative remedies.

**MEMORANDUM DECISION AND ORDER- 33**

days later to grieve another incident. (Dkt. 35-9 at 72.) Taking these indisputable facts together, along with the evidence of the grievance system itself, the Court finds Hogue has failed to create a genuine dispute about whether the threats from Deputy Greany rendered the Ada County Jail grievance system effectively unavailable. *See Pelayo v. Hernandez*, 2015 WL 4747831, at *8 (N.D. Cal. Aug. 11, 2015) (where inmate filed grievance within a week after an alleged threat, he has not shown that he was "actually deterred" from filing a grievance such that administrative remedies could be deemed unavailable). Accordingly, Hogue's First Amendment access to courts claim will be dismissed because Hogue failed to exhaust his administrative remedies on this claim.

### ii. First Amendment Interference with Visitation Claim—Stoltenberg and McDaniel

Hogue complains the BMP interfered with his ability to receive visitors in violation of his rights under the First Amendment. Hogue does not allege he filed a grievance, but instead argues he should be excused from exhausting his administrative remedies on account that Hogue did not have access to the necessary grievance forms within Ada County's seven day limit for filing a grievance, due to other restrictions of his BMP.

The Court rejects Hogue's argument. For the duration of Hogue's BMP and behavior contract, which occurred September 7 through November 4, 2011, Hogue alleges he was denied visitation— this alleged constitutional violation was ongoing throughout the entire duration of both behavior plans. The record demonstrates that, as part of Hogue's behavior contract, which he assisted in drafting, Hogue regained the

**MEMORANDUM DECISION AND ORDER- 34**

privilege to file one grievance per day beginning on September 30, 2011. (Dkt. 62-7 at

25.) The record demonstrates also that Hogue regained the privilege to access a pen and

paper on October 7, 2011. *Id.* Hogue provides no reason as to why he was unable to file a

grievance after regaining the privileges to file a grievance and access to pen and paper.

Based on these facts, the Court finds Hogue has failed to present facts or evidence to

establish a genuine dispute as to whether the Ada County Jail grievance system was

rendered effectively unavailable to Hogue. Accordingly, Hogue's First Amendment

interference with visitation claim will be dismissed because Hogue failed to exhaust his

administrative remedies on this claim.

### iii. Fourteenth Amendment Excessive Force Re: Cell Removal—Panter, Arnold, and Jones

Hogue alleges that, on August 8, 2011, after he refused to comply with deputies'

instructions so they could search his cell, Deputy Panter sprayed him with oleum

capsicum spray; and, Panter, Jones, and Arnold rushed into his cell together and knocked

Hogue off his bed, causing Hogue's forehead to strike the metal toilet and concrete floor.

Hogue argues he filed a grievance regarding the forced removal from his cell; however,

because Ada County Jail staff never responded to his grievance, he was unable to exhaust

his administrative remedies.[24] In support of this argument, Hogue points to other

---

[24] Hogue did file a grievance on August 17, 2011, addressing Deputy Panter's use of oleum capsicum spray. The Court concluded in its previous Order that Hogue exhausted his administrative remedies with respect to a Fourteenth Amendment excessive force claim against Deputy Panter for the use of oleum capsicum spray. (Dkt. 61 at 28.) However, the Court found the same grievance was not sufficient to exhaust a separate Fourteenth Amendment excessive force claim against Panter, Jones, and Arnold for the forced removal of Hogue from his cell as the grievance does not mention any facts to support these additional allegations. *Id.*

**MEMORANDUM DECISION AND ORDER- 35**

incidents where his grievances allegedly were not timely addressed by Ada County Jail staff.

The Court finds Defendants have met their burden of demonstrating that administrative remedies were available to Hogue and that he failed to exhaust them. In support of their initial motion to dismiss, Defendants included the affidavit of Lieutenant Chad Sarmento, who reviews all grievances submitted by inmates and the responses to those grievances. Lieutenant Sarmento indicated that, once an inmate grievance form is delivered, the information is typed and logged into the Ada County Jail record system. Attached to his affidavit, Lieutenant Sarmento provided all grievances filed by Hogue between April of 2011 and August of 2013. After careful review of those grievances, the Court finds there is no grievance on record about any deputy striking Hogue or knocking him off his bed on August 10, 2011.

The Court must next address the question of whether Hogue should be excused from failing to exhaust this claim. This Court's decision in *Horonzy v. Corr. Corp. of Am.*, 2013 WL 3148674, at *5 (D. Idaho June 19, 2013) is particularly instructive and applicable here with regard to how to address Hogue's alleged "lost" grievance.

In *Horonzy*, an inmate filed an offender concern form, alleging he felt threatened and intimidated by a member of the jail staff. *Id.* Prison staff signed and dated the form, acknowledging its receipt; however, no written response was provided. *Id.* Three weeks later, the inmate filed a grievance form complaining that he never received a response. *Id.* The prison rejected the grievance on account that the Warden never received the concern form and the jail did not process his grievance. *Id.* The Court held that the inmate's

**MEMORANDUM DECISION AND ORDER- 36**

failure to exhaust may be excused on the ground and for reasons that it was the prison officials' improper screening or failure to provide instructions on how to proceed "that foiled [the inmate's] efforts to complete all necessary steps in the [prison] grievance process." *Id. See also Nunez v. Duncan*, 591 F.3d 1217, 1217 (9th Cir. 2010) (an inmate's failure to exhaust may be excused if such failure was not through his own fault but because of a prison official's mistake).

Unlike the circumstances in *Horonzy*, there is no evidence in this record that Ada County Jail officials foiled Hogue's efforts to complete the grievance process with respect to his excessive force claims against Panter, Arnold, and Jones. Hogue does not provide a receipt of the grievance nor does he point to any evidence to suggest that Ada County mishandled the particular grievances.[25]

The Court does take into consideration that the Inmate Handbook fails to provide inmates instructions on how to precede in the event an inmate does not receive a response to a grievance. However, the Court finds the lack of instructions is of little relevance here. The record clearly indicates that Hogue knew what to do when Ada County Jail staff waited longer than anticipated to respond to his grievances. Hogue often followed up on his grievances when he had not received a response by filing a grievance requesting a response. *See* Grievance Nos.: 1969 (Dkt. 35-8 at 59), 2042 (Dkt. 35-8 at 71), 2081 (Dkt. 35-9 at 19), 2229 (Dkt. 35-9 at 40), and 2249 (Dkt. 35-9 at 37). However,

---

[25] The Court acknowledges that nothing in the record other than Hogue's self-serving statement corroborates this claim. Medical personnel examined Hogue on August 10, 2011, after he was sprayed with oleum spray. The medical records for this examination do not indicate Hogue complained of any injury to his forehead. On August 16, 2011, (six days after the alleged incident) Hogue was treated by the medical unit for an ingrown finger nail. The medical records do not indicate that Hogue complained of pain to his forehead on this visit. (Dkt. 63-1 at 13 *sealed*).

**MEMORANDUM DECISION AND ORDER- 37**

Hogue did not file a "follow up" grievance to this claim. Based on these collective set of facts, the Court finds Hogue has failed to establish a genuine dispute as to whether the Ada County Jail grievance system was rendered effectively unavailable to Hogue. Accordingly, Hogue's Fourteenth Amendment excessive force claim regarding removal from his cell will be dismissed because Hogue failed to exhaust his administrative remedies on this claim.

### iv. Fourteenth Amendment Substantive Due Process Claim—Phillips and Brewer

Hogue alleges in his proposed amended complaint that Defendant Phillips, a social worker, and Defendant Brewer, a nurse, violated his due process rights by failing to examine him before approving him mentally and physically fit for the BMP. He specifically alleges that they knew or should have known he has a mental disorder. Hogue produced a "medical grievance form" that he alleges he submitted on October 27, 2011, that complains about this issue. (Dkt. 51-5 at 19.) The form, however, bears no response. In its preliminary Order addressing Defendants' original motion to dismiss, the Court considered the claim exhausted, but permitted Defendants to bring forth evidence, if any exists, to demonstrate the form was never provided to Ada County Jail.

In Defendants' current motion, they argue Ada County Jail never received the "medical grievance form" provided by Hogue, because if they had, the form would have been assigned a number and the staff member who received it would have placed his identification number on the form as well. Hogue, to the contrary, alleges he did submit the medical grievance form regarding Phillips's and Brewer's approval of the BMP; but,

**MEMORANDUM DECISION AND ORDER- 38**

because Ada County Jail medical staff never responded to his grievance, he was unable to exhaust his administrative remedies. In support of this argument, Hogue points to other alleged incidents where his medical grievances were not timely addressed by Ada County Jail staff. Alternatively, Hogue alleges he should be excused from exhausting his administrative remedies because he was prohibited from filing any grievance forms as part of his BMP.

In support of Defendants' argument, Defendants attach the affidavit of Kate Pape, Administrator of Ada County Jail's Health Services Unit. (Dkt. 62-3.) Unlike inmate grievance forms, which are reviewed and overseen by Lieutenant Sarmento, medical grievance forms are filed with the medical unit and reviewed by Pape. (Dkt. 35-2.) Pape explained that once medical grievance forms are completed and submitted to a member of the health care staff, the form is given a number and the staff member who takes the form puts his or her identification number on the form. *Id.* In addition, Pape explained all grievances are responded to, and a copy is returned to the inmate for his records. Pape provided all documents related to Hogue for the year of 2011—these records included twenty-five pages of medical requests and attachments. Hogue's grievance is not included in Pape's records. Because Ada County Jail medical has no record of Hogue's medical grievance form regarding Phillip's and Brewer's approval of the BMP without examination, and because the form submitted by Hogue has neither a number nor an identification number of the staff member, Defendants contend that Hogue never submitted the form.

**MEMORANDUM DECISION AND ORDER- 39**

In Hogue's opposition to the motion, Hogue alleges that, simply because his medical grievance form lacks an identification number or any identification of receipt, it does not mean that the form was never received by the Health Services Unit. In support of his argument, Hogue points another medical grievance form without any receipt identifications. (Dkt. 51-5 at 27 and 80-3 at 5.) In that medical grievance form, Hogue requested a "medical mattress." *Id.* Medical staff responded to the form by instructing Hogue to "keep [the grievance] for your record." No identification number is on the medical grievance form itself. However, the record indicates the medical grievance was forwarded out of the medical unit and to regular jail staff to address, as Hogue's request was outside the scope of the medical unit. Hogue's grievance was responded to the following day, explaining that "Medical does not provider[sic] a medical mattress. Our protocol allows for a second regular mattress in very limited situations…." (Dkt. 63-3 at 13 *sealed.*)

Hogue's example of pointing to another medical grievance form without identification overlooks two very important details: First, the medical grievance form was responded to by medical staff and then, in more detail, by regular jail staff; and second, that particular grievance, once forwarded out of medical *did* receive an identification number (Grievance ID: 1265).

Applying the *Horonzy* standard cited in the section immediately above, the Court finds there is no evidence in the record, or any argument raised by Hogue, that Ada County Jail or Ada County Jail Medical officials foiled Hogue's efforts to complete the grievance process with respect to his substantive due process claim against Phillips and

**MEMORANDUM DECISION AND ORDER- 40**

Brewer. Hogue does not provide a receipt of the grievance nor does he point to any evidence to suggest that Ada County mishandled the particular grievance. Likewise, despite knowing how to "follow up" on grievances when he did not timely receive a response, the Court finds no evidence in the record to demonstrate that Hogue tried to follow up on this grievance against Phillips and Brewer. Accordingly, the Court finds Hogue failed to exhaust his administrative remedies on this claim and will dismiss it.

### III. Competing Cross-Motions for Summary Judgments (Dkts. 81, 85)

On April 27, 2015, Hogue filed a Cross-Motion for Partial Summary Judgment on the following claims: (1) Fourteenth Amendment Procedural Due Process claim against Stoltenberg and McDaniel; and, (2) First Amendment freedom of speech claim against Stoltenberg and McDaniel for interfering with his ability to contact the outside world. (Dkt. 81.) Less than one month later, Defendants Stoltenberg and McDaniel filed a Cross-Motion for Summary Judgment on the grounds of qualified immunity. (Dkt. 85.) Stoltenberg and McDaniel's cross-motion seeks to dispose of the two claims challenged in Hogue's cross-motion for summary judgment in addition to the Fourteenth Amendment Substantive Due Process claim and the First Amendment claim for interfering with Hogue's free exercise of religion brought against them.

#### A. Qualified Immunity Standard of Law

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held

**MEMORANDUM DECISION AND ORDER- 41**

personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. at 201. Addressing the two prongs of the test in this sequence is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To determine whether a right was clearly established, courts turn to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.*

 The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right"

**MEMORANDUM DECISION AND ORDER- 42**

must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635 (1987). It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95.

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful." *Saucier*, 533 U.S. at 195. However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

Because the first step of qualified immunity—determining whether a Constitutional violation occurred—overlaps with the merits of Hogue's claims and those claims Hogue seeks summary judgment upon—the Court will proceed through the qualified immunity analysis.

**MEMORANDUM DECISION AND ORDER- 43**

**B. Background Re: Hogue's BMP**

Defendant Paul Stoltenberg was (and is) the Classification Sergeant for the Ada

County Sheriff's Office at all times relevant to the actions giving rise to this litigation.

(Dkt. 35-2 at 2.) As the Classification Sergeant, part of Stoltenberg's responsibilities are

to oversee the BMPs and behavior contracts of inmates who refuse to comply with jail

rules or orders of staff, threaten the safety of other inmates, or conduct themselves in a

manner that is disruptive to the orderly running and security of the jail. Over the course

of six years, there have been fifteen BMPs or behavior contracts implemented at the Ada

County Jail. Sergeant Stoltenberg has overseen all fifteen plans or contracts, including

Hogue's plan.

     Defendants describe Plaintiff's behavior that led to the BMP as follows:

> The documents on file with the Court illustrate that Hogue was on the
> Behavior Modification Plan ("BMP") because he chose not to modify his
> behavior, and his poor behavior posed a threat to the safety of staff, other
> inmates and to the security of the Ada County Jail. Hogue exhibited
> exceedingly poor behavior on numerous occasions and refused to change
> those behaviors in the months preceding his placement on the BMP. Hogue
> ignored orders of jail officers, refused to cooperate, failed to tell the truth,
> was verbally abusive which escalated into aggressive behavior, made
> threatening statements to staff, compromised jail security by putting things
> in cell doors, covered cameras, switched into lower level security clothes,
> was aggressive with other inmates, and flushed his clothing down the toilet
> to create flooding in the jail. Response (Dkt. 62) Bates 2, 13, 21, 26, 29, 32,
> 38, 44, 62, 70, 74, 78, 85, 89, 103, 105, 109, 112, 113, 116, 119, 123, 161,
> 165, 173, 174, Sealed Response (Dkt. 63) Bates 267.

(Dkt. 85-1, p. 6.)

**MEMORANDUM DECISION AND ORDER- 44**

Prior to placing Hogue on his BMP, Sergeant Stoltenberg completed the "BMP Checklist"[26] to ensure Hogue was "cleared" both mentally and physically for the BMP; Sergeant Stoltenberg's supervisor, Lieutenant McDaniel, approved the plan. Stoltenberg emailed Hogue's attorney to inform him of the BMP and that he was able to visit Hogue at any time; and, spoke to Hogue's attorney on September 8, 2011, to verify he received the email.

Stoltenberg alleges that, because of Hogue's numerous threats toward staff and his behavior issues, the Special Response Team was asked to stand by when Hogue was informed of and placed on the BMP. On September 7, 2011, Stoltenberg read the terms of the BMP to Hogue and Hogue signed the plan. Hogue alleges he signed the plan out of fear due to the presence of the Special Response Team.

Hogue's BMP placed him on the following initial restrictions:

- One pair of underwear
- Styrofoam cup
- Finger foods at meals
- Meals served on paper
- Hygiene items only during 15-minutes shower time
- All privileges removed in disciplinary detention.

---

[26] The checklist consisted of questions such as: "Has progressive discipline been imposed and the inmate has served part of the disciplinary sanction to include lockdown with loss of all privileges," "Does the inmate's behavior present a danger to staff, him/herself, or others," " If attorney phone privileges have been taken as a deprivation, has the attorney of record been notified?" (Dkt. 62-2 at 5.)

**MEMORANDUM DECISION AND ORDER- 45**

(Dkt. 62-2 at 6.) According to the plan, Hogue could modify the restrictions if he complied with the required behavior[27] for two days and on approval of Sergeant Stoltenberg. *Id.*

On September 7, 2011, the first day of the BMP, Hogue sat in his cell nude.[28] Hogue threatened staff, covered his cell windows and utility port, was disrespectful to staff, failed to obey verbal orders, refused to stand for headcount, covered the cell camera with toilet paper, and attempted to self-harm himself with parts from his jail-issued ID wristband. (Dkt. 62-7 at 24.) On September 10, 2011, Hogue was provided a jail uniform.[29] *Id.* Hogue gradually earned back other privileges:

- 9/12/11—suicide blanket
- 9/14/11—yoga mat and one attorney telephone call per day
- 9/16/11—one pair of socks.
- 9/18/11—one pair of footwear and one hour daily out of cell/recreation time
- 9/20/11—one sheet traded in for suicide blanket
- 9/22/11—mattress traded in for yoga mat
- 9/24/11—hygiene items for storage in cell.

---

[27] The BMP required the following behavior to lift the restrictions: (1) Follow all jail rules; (2) Comply will all orders given by staff; (3) Stand for headcounts; (4) Treat staff, inmates, and visitors respectfully; (5) Engage in no disruptive behavior, disturbances, or demonstrations; (6) Damage no jail property; (7) Throw/propel no materials, objects, or bodily fluids at staff or other inmates; (8) No intentional flooding of toilet or sink; (9) No misuse or abuse of equipment or supplies; (10) No covering camera or cell windows; (11) No blocking of any locking device; and (12) No threatening or harassment of staff, inmates, or visitors  (Dkt. 62-2 at 6.)

[28] Hogue alleges his underwear was taken from him for no reason. (Dkt. 73-1 at 25.) Defendants, on the other hand, allege Hogue did not have underwear because he attempted to flush his one pair down the toilet. (Dkt. 85-2 at 4.) This period of nakedness is the same period of nakedness in which Hogue refers to in his Fourteenth Amendment substantive due process claim against Munifering.

[29] During the days Hogue was in his cell naked, the cell temperature ranged between 69.5 degrees F. to 71.88 degrees F.

**MEMORANDUM DECISION AND ORDER- 46**

On September 26, 2011, Hogue was allegedly disrespectful to staff, failed to obey staff verbal orders, and tossed his medication in the toilet. This behavior caused the BMP to start over from the beginning. Hogue was provided a jail uniform two days later. Sometime between September 26, 2011, and September 29, 2011, Hogue contacted Sergeant Stoltenberg to inform him that he had developed his own behavior contract for consideration. In response to Hogue's proposal, Stoltenberg drafted a "Classification Behavior Contract" in an attempt to meet Hogue halfway.

In exchange for following jail rules, Hogue received the following:

- Housing assignment in Close Custody Unit U-tank
- Mattress
- Linen consisting of two blankets and two sheets
- Two towels
- Cup and spoon
- Regular tray at meals
- Two sets of jail uniforms, one sweatshirt, and one pair of jail issued footwear
- One pair of socks and underwear
- Daily shower time of 15-minutes with issued hygiene supplies
- Use of cleaning supplies for 10 min to clean cell
- Two attorney calls each week
- Daily use of razor or electric razor
- If needed, file one IRF and/or one grievance at morning headcount.

(Dkt. 62-7 at 25.)

Pursuant to the behavior contract, Hogue would receive additional privileges at day 7, 14, 21, 28, and 35 if he followed the conditions of the contract. Hogue began earning back other privileges:

**MEMORANDUM DECISION AND ORDER- 47**

- 10/7/11: provided pen, paper, and notebook from personal property, allowed clergy visits
- 10/14/11: provided personal and legal mail, hygiene items, and envelopes from his personal property
- 10/21/11: received all remaining items from his personal property
- 10/28/11: provided 1 1/2 hours each day out of cell time and allowed access to the telephones for personal calls.

On November 4, 2011, Hogue completed the BMP and received the privileges provided to all inmates housed in the Close Custody Unit.

The following facts are not in dispute: (1) the month leading up to Hogue's BMP, he received seven disciplinary write-ups; (2) on September 7, 2011, Sergeant Stoltenberg placed Hogue on his BMP; (3) Sergeant Stoltenberg did not conduct a hearing prior to placing Hogue on the BMP; (4) on September 28, 2011, Hogue filed a grievance complaining that he BMP constituted "cruel and unusual punishment"; (5) in Sergeant Stoltenberg's response to the grievance, he indicated "[t]his plan was specifically drafted to discipline you for your continued misconduct and to deter you from similar acts in the future…."

### C. Fourteenth Amendment Substantive and Procedural Due Process claims for allegedly placing Hogue on a BMP as punishment without a hearing

Hogue contends Stoltenberg and McDaniel violated his constitutional rights to substantive and procedural due process when he was placed on a BMP as punishment for violating jail rules without having had an opportunity to be heard. Stoltenberg and McDaniel assert that the BMP was not intended to punish Hogue, but instead, was implicated for security reasons as Hogue's poor behavior, at that time, posed a threat to the safety of the staff, other inmates, and the security of the Ada County Jail. Stoltenberg

**MEMORANDUM DECISION AND ORDER- 48**

and McDaniel contend further, that even if the BMP was a form of punishment, and thereby violated Hogue's substantive due process rights, they are protected from liability by the doctrine of qualified immunity because there was no clearly established law that would have put them on notice that placing Hogue on the BMP without a hearing would violate Hogue's constitutional rights to due process.

### i. Standard of Law governing Pretrial Detainee Punishment and Jail Management

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court reiterated that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. at 535. The government may detain a person "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536.

"[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996.) The United States Court of Appeals for the Ninth Circuit observed: "Indeed, a due process hearing helps to ensure that *disciplinary punishment is what it purports to be*, rather than punishment in advance of conviction for the crime that led to detention—the evil condemned by *Bell*." *Id*. at 525 n.4 (emphasis added). In other words, a pretrial detainee is not "free to violate jail rules with impunity," and jail officials have a legitimate need to preserve "internal order and discipline" among pretrial detainees. *Bell*, 441 U.S. at 546; *Mitchell*, 75 F.3d at 524 (9th Cir. 1996).

**MEMORANDUM DECISION AND ORDER- 49**

Thus, pretrial detainees do not have a substantive due process right in avoiding any punishment for violating rules of the detention facility. Rather, a pretrial detainee has a liberty interest—with attendant procedural due process protections—in avoiding punishment for violations of the rules of the detention facility if he did not actually commit the violations. *Mitchell*, 75 F.3d at 524.[30] Therefore, in cases involving restrictions imposed on pretrial detainees as punishment for regulatory violations, detainees "may be subjected to disciplin[e] . . . only with a due process hearing to determine whether they have in fact violated any rule." Id.

On the other hand, *Bell* is clear that "[e]nsuring security and order at the institution is a permissible nonpunitive objective." 441 U.S. at 561. Where there is no allegation that the conditions imposed were for the purpose of punishment, but the conditions are alleged to be "greater than necessary to satisfy petitioners'[jail's] legitimate interest in maintaining security," then "the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id.*

In *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuit explained how to conduct such an analysis:

---

[30] Due Process requires that a prisoner charged with a disciplinary violation have the following minimum protections: "(1) advance written notice of the charges, (2) an opportunity to call witnesses provided there is no conflict with institutional safety and correctional goals, and (3) a written statement outlining the evidence relied on and the reasons for the disciplinary action." *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

**MEMORANDUM DECISION AND ORDER- 50**

Pretrial detainees have a substantive due process right against restrictions that amount to punishment. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir.1991) (*en banc*). This right is violated if restrictions are "imposed for the purpose of punishment." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861. There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." *Id*. In such a circumstance, governmental restrictions are permissible. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095.

In distinguishing between a permissible restriction and impermissible punishment, we first examine whether the restriction is based upon an express intent to inflict punishment. *Id*. ...

We next consider whether punitive intent can be inferred from the nature of the restriction. This determination will generally turn upon "'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" *Bell*, 441 U.S. at 539, 99 S.Ct. 1861 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (alterations in original). Put more simply, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Bell*, 441 U.S. at 539, 99 S.Ct. 1861.

*Id*. at 1045-56.

### ii. Discussion and Analysis of Alleged Due Process Violations

Here, the jail official's express statement to Hogue provides some evidence that the BMP was intended to discipline, although it referenced that it was for the purpose of his "continued misconduct." The facts also show that Hogue could be relieved of the conditions of the BMP as soon as he conformed his behavior to reasonable jail requirements related to legitimate penological purposes, and that he was not under a *traditional* punishment scheme for *past* conduct. In addition to the reference to an intent to "discipline," the record is replete with evidence that a BMP was immediately

**MEMORANDUM DECISION AND ORDER- 51**

necessary for the orderly management of the jail system and the safety and security of Hogue, other inmates, and jail staff. Neither *Wolfish* nor *Valdez* provides instruction regarding a situation where the reasons for immediately instituting a BMP are for *both* a punitive reason and a nonpunitive reason. This question naturally leads into Defendants' qualified immunity defense.

The Court need not address the first prong of the qualified immunity analysis because—even assuming that the BMP violated Plaintiff's due process rights—it was not clearly established at the time of Defendants' actions that the BMP was unconstitutional.

There is evidence in the record that Defendants issued the BMP with an intent to punish Plaintiff—Stoltenberg candidly informed Plaintiff that the BMP was instituted as a form of discipline. Two features make this a new factual scenario not addressed by prior case law. One, as described above, is that the "discipline" was for future conduct, evidenced by the fact that Plaintiff could exhibit good behavior and free himself of the more restrictive conditions. No case law of precedent addresses whether this type of nontraditional discipline is the type of "punishment" contemplated by *Bell.* Further, there were no words of intentional punishment by jail officials in *Valdez*, and so that clearly does not amount to clearly-established law. It defies logic to read prior case law to mean that, simply because a jail official says the word "discipline," when the conditions imposed clearly are necessary for jail management purposes, a detainee's due process rights are violated.

However, simply because the BMP was motivated in part by an intent to punish does not foreclose qualified immunity, because there is also evidence that the BMP was

**MEMORANDUM DECISION AND ORDER- 52**

instituted as an attempt to treat Plaintiff's serious behavioral and mental health issues. The record reflects a mixed motive for the institution of the BMP, and the BMP was—at least in part—supported by the legitimate penological purpose of resolving Plaintiff's self-destructive and dangerous behavior.

The Court has found no case clearly establishing the proposition that an intent to punish always requires a due process hearing *even if* another, lawful motive exists for the action taken by officials. In fact, the case law trends opposite. In *Foy v. Houston*, for example, the Eleventh Circuit addressed qualified immunity with respect to a claim of religious discrimination. 94 F.3d 1528 (11th Cir. 1996). The *Foy* plaintiffs asserted that state officials committed religious discrimination, in violation of the First Amendment and the Equal Protection Clause, by removing their children from their homes. These claims required the plaintiffs to prove that the defendants' actions were taken with a subjective, discriminatory motive. *Id*. at 1533. The evidence suggested that the defendants were motivated in part by a discriminatory motive; however, other evidence showed that the defendants also had a lawful motive for their action—there was probable cause to believe that the children were being mistreated. *Id*. at 1535. The Eleventh Circuit determined that, because the defendants acted with mixed motives, and not purely with discriminatory intent, they were entitled to qualified immunity.

The Court agrees, "[a]t least when an adequate lawful motive is present, that a [punitive] motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage." *Id*. at 1534-35. As in *Foy*, the evidence in this case suggests that Defendants had both a punitive purpose and a lawful purpose. Because it is

**MEMORANDUM DECISION AND ORDER- 53**

not "plain under the specific facts and circumstances of [this] case that [Defendants']

conduct—despite [their] having adequate lawful reasons to support the act—was the

result of [their] unlawful motive," Defendants are entitled to qualified immunity.

In *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003), the United States Court of

Appeals for the Ninth Circuit granted qualified immunity in a new factual situation where

facts implicating two different standards of law converged, and the no prior case law

addressed both, such that the government officials would have had notice of whether their

decisions conformed to the law.

The Court of Appeals explained:

> We have before us a novel situation. In the case at bar, it is not Serrano's
> administrative segregation alone that potentially implicates a protected
> liberty interest. Instead, Serrano's disability—coupled with administrative
> segregation in an SHU that was not designed for disabled persons—gives
> rise to a protected liberty interest. That is, the conditions imposed on
> Serrano in the SHU, by virtue of his disability, constituted an atypical and
> significant hardship on him.

*Serrano*, 345 F.3d at 1078-79. The court held that Serrano's due process claim was

subject to qualified immunity because that court had "never discussed disabled inmates'

rights in the context of claims involving protected liberty interests, and "no case in this

circuit touches on the proper conditions for the liberty interest rights of disabled inmates

in administrative segregation." *Id.* at 1081.

Development of the law in situations such as that faced by Defendants may follow

the direction of retaliation case law, which holds that a retaliatory motive alone does not

violate the Constitution "unless their retaliatory action did not advance legitimate goals of

the correctional institution or was not tailored narrowly enough to achieve such goals."

**MEMORANDUM DECISION AND ORDER- 54**

*Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003). What is clear is that the law governing Defendants' actions is unclear; hence, Defendants must prevail on their qualified immunity defense.

### D. First Amendment freedom association claim for interfering with right to communicate by telephone or mail with the outside world and his attorney

Hogue alleges Sergeant Stoltenberg and Lieutenant McDaniel violated his First Amendment right to free speech via the BMP by placing restrictions on Hogue's ability to contact anyone by telephone or by mail, including his attorney. [31] Defendants assert that no constitutional violation occurred because Hogue failed to demonstrate he suffered an actual injury as a result of the temporary restrictions. Alternatively, Defendants raise the defense of qualified immunity. For the reasons that follow, the Court finds no constitutional violation occurred.

The standards governing First Amendment claims of incarcerated citizens are outlined by the United States Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). There, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Court identified four factors to balance when

---

[31] In the Court's initial review of Hogue's complaint, the Court found a colorable First Amendment claim regarding Hogue's inability to access his attorney and others during his BMP. Though Hogue alleged he was unable to contact his attorney, the Court found that because Hogue failed to state facts to demonstrate that his criminal defense or the effectiveness of his counsel was affected by the restrictions to Hogue's use of the telephone and mail, the Court did not permit Hogue to proceed on a Sixth Amendment claim. (Dkt. 61 at 20.)

determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89–90 (The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns.").

Based on the facts set forth above, Defendants carried their burden by providing sufficient evidence to show that the first factor was met: there was a rational connection between the temporary mail and telephone restriction to incentivize Hogue to improve his behavior to maintain the safety of jail staff, other inmates, and the security of the jail. *See Beard v. Banks*, 548 U.S. 521, 531-32 (2006) ("the articulated connections between newspapers and magazines, the deprivation of virtually the last privilege left to an inmate, and a significant incentive to improve behavior, are logical ones" and weigh in factor of reasonableness).

With regard to the second factor, upon review of the BMP terms, if Hogue continued to behave poorly, he had no alternative means of exercising his right to communicate with the outside world, including his attorney. But, after only a few days,[32]

---

[32] Defendants allege Hogue could have lifted these restrictions within two days. However, upon review of the BMP, it is not clear the order in which Hogue could regain certain privileges.

**MEMORANDUM DECISION AND ORDER- 56**

Hogue had the ability to regain access to those means of communication. In fact, the record indicates that after seven days, Hogue was permitted to make one attorney telephone call per day. After one month, he was provided books, paper, and pen. After five weeks he was provided his mailing envelopes, and after seven weeks he regained the privilege to access the telephone for personal calls. Hogue did enjoy the right to have contact visits with his attorney throughout his BMP; however, his attorney had to contact him first. The temporary BMP restrictions simply limited, but do not eliminate access. The temporary absence of alternatives provides some evidence that the BMP restrictions are unreasonable, but are not conclusive of the BMP's overall reasonableness.

The third factor weighs in favor of Defendants. Were Stoltenberg and McDaniel to seek to accommodate the asserted constitutional right (permitting Hogue access to make telephone calls and send mail), the resulting impact could have been negative. That circumstance is inherent in the nature of the BMP: if the BMP (in Stoltenberg's view) helps to produce better behavior, then absent the BMP (in Stoltenberg's view) bad behavior would continue, jeopardizing the safety of the jail. The fourth factor weighs also in Defendants' favor as the record does not point to or call to mind any "alternative method of accommodating [Hogue's] constitutional complaint…that fully accommodates the [inmate's ] rights at *de minimis* cost to valid penological interests. *Beard v. Banks*, 548 U.S. 521, 532 (2006) (citing *Turner,* 482 U.S., at 90).

Construing these facts in Hogue's favor, which the Court must do, the Court concludes there are no disputed facts upon which a reasonable jury could conclude that the temporary restriction on Hogue's First Amendment right to contact the outside world

**MEMORANDUM DECISION AND ORDER- 57**

was not reasonably related to a legitimate penological interest. Accordingly, this claim will be dismissed.

### E. First Amendment interference with visitation and religious exercise claims

The Court need not reach the merits of Defendant' motion for summary judgment with respect to Hogue's First Amendment interference with visitation and religious exercise claims against Stoltenberg and McDaniel. As previously explained above, the Court will dismiss the visitation claims due to Hogue's failure to exhaust his administrative remedies and will dismiss the religious exercise claims for failure to state a claim.

## MOTION FOR LEAVE TO CONDUCT DISCOVERY (DKT. 90)

On June 17, 2015, Hogue field a motion for leave to conduct discovery on claims not subject to Defendants' two dispositive motions. (Dkts. 75, 85.) Hogue will have his chance to conduct discovery on these claims. Accordingly, the Court will deny this motion as moot. Deadlines for the completion of discovery will be included in a forthcoming order.

## CONCLUSION

The following claims remain in this prisoner civil rights litigation:

- Fourteenth Amendment excessive force claim against Defendants Ivie and Shaver for the alleged assault incident on April 26, 2011. (Dkt. 73-1 at 8.)

- Fourteenth Amendment excessive force claim against Panter for use of OC spray. (Dkt. 73-1 at 14.)

- Corresponding state tort based claims as outlined in the Initial Review Order. (Dkt. 14.)

**MEMORANDUM DECISION AND ORDER- 58**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 73) is **GRANTED in part (regarding the two federal claims Hogue is permitted to proceed upon and the corresponding tort claims as outlined above) and DENIED in part**;

2) Plaintiff's Objection and Motion to Strike is **DENIED** (Dkt. 87);

3) Defendants' Partial Motion to Dismiss and Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. 75) is **GRANTED**;

4) Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 81) is **DENIED**;

5) Defendants' Cross-Motion for Partial Summary Judgment (Dkt. 85) is **GRANTED**;

6) Plaintiff's Motion for Leave to Conduct Discovery (Dkt. 90) is **DENIED as MOOT.**

Deadlines for completion of discovery and pretrial filings will be included in a forthcoming order.

Dated: **March 31, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 59**